UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

JOANNA PROFITA,

           Plaintiff,

v.       Case No.  5:09-cv-319-Oc-10GRJ

MICHAEL J. ASTRUE, Commissioner of Social Security,

           Defendant.
_____

## ORDER

Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying her applications for period of disability, disability insurance benefits and supplemental security income.  (Doc. 1.)  The Commissioner has answered (Doc. 9) and both parties have filed briefs outlining their respective positions.  (Docs. 16 & 17.)  For the reasons discussed below, the Commissioner's decision is due to be **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

## I. PROCEDURAL HISTORY

On October 25, 2005, Plaintiff filed applications for a period of disability, disability insurance benefits and Supplemental Security Income claiming a disability onset date of June 30, 2003. (R. 25-31.)  Plaintiff's applications were denied initially and upon reconsideration. (R. 42-51.)  Thereafter, Plaintiff timely pursued her administrative remedies available before the Commissioner, and requested a hearing before an Administrative Law Judge ("ALJ").  (R. 40.)  ALJ James R. Ciravino conducted the hearing on February 2, 2007, and both Plaintiff and her mother testified. (R. 359-92.)

The ALJ issued a decision unfavorable to Plaintiff on June 20, 2007. (R. 25-31.) The Appeals Council denied Plaintiff's request for review. (R. 9-12.) Plaintiff then appealed to this Court (Doc. 1) and is proceeding *pro se.*

## II. **STANDARD OF REVIEW**

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[1] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[2]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[3] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[4] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with

---

[1] See 42 U.S.C. § 405(g).

[2] See Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); *accord,* Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[3] See Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[4] See Foote, 67 F.3d at 1560; *accord,* Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

sufficient reasoning to determine that the Commissioner properly applied the law.[5]

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[6] The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy.[7]

The ALJ must follow five steps in evaluating a claim of disability.[8] First, if a claimant is working at a substantial gainful activity, she is not disabled.[9] Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.[10] Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.[11] Fourth, if a claimant's impairments do not prevent her from doing past

---

[5] See Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[6] See 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.

[7] See 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[8] See 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[9] See 20 C.F.R. § 404.1520(b).

[10] See 20 C.F.R. § 404.1520(c).

[11] See 20 C.F.R. § 404.1520(d).

relevant work, she is not disabled.[12] Fifth, if a claimant's impairments (considering her RFC, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.[13]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[14] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[15] The Commissioner may satisfy this burden by pointing to the grids for a conclusive determination that a claimant is disabled or not disabled.[16]

However, the ALJ should not exclusively rely on the grids when the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion.[17] In a situation where both exertional and non-exertional impairments are

---

[12] See 20 C.F.R. § 404.1520(e).

[13] See 20 C.F.R. § 404.1520(f).

[14] See Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987). *See Also* Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

[15] See Doughty at 1278 n.2 ("In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.") (*internal citations omitted*).

[16] See Walker at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.")

[17] See Phillips v. Barnhart, 357 F. 3d 1232, 1243 (11th Cir. 2004); Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996); Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker at 1003 ("the grids may be used only when each variable on the appropriate grid accurately describes the claimant's

(continued...)

found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[18]

The ALJ may use the grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[19] Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of introducing such evidence.[20] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.[21]

### III. SUMMARY OF THE RECORD EVIDENCE

Plaintiff was forty-one (42) years old when the ALJ issued his decision. (R. 363.) Plaintiff has a high school education and has worked as a secretary and retail clerk. (R. 68, 369.) Plaintiff contends that she has been unable to work since June 30, 2003 due to a number of impairments including chronic fatigue, fibromyalgia and mood disorder. (R. 361, 364.) Plaintiff's date last insured is September 30, 2004. (R. 366.)

At the hearing, Plaintiff testified that she has chronic fatigue syndrome and carpal tunnel syndrome. She fractured her right foot in 2003 and it is still painful and

---

[17](...continued)
situation").

[18] See Walker at 1003.

[19] See Wolfe at 1077-78.

[20] See id.

[21] See Doughty at 1278 n.2.

5

swollen. (R. 373.)   Plaintiff testified that she has constant and debilitating fatigue and pain, insomnia and depression. (R. 373-74.)   Plaintiff's mother testified that Plaintiff is always in pain and tired and she does not sleep. (R. 387.)  Plaintiff testified that she is not taking medicines due to allergies. (R. 374.)

Based on his review of the record, including Plaintiff's testimony and the medical records from several health care providers, the ALJ determined that Plaintiff had fibromyalgia, chronic fatigue syndrome, obesity and an adjustment disorder with depressed mood. (R. 27.) However, the ALJ determined that Plaintiff did not have an impairment or combination of impairments which met or medically equaled one of the impairments listed in Appendix 1, Subpart P of Social Security Regulation No. 4.   (Id.)

The ALJ then found that Plaintiff retained the RFC to lift and carry 50 pounds occasionally and 25 pounds frequently; and stand or walk for about 6 hours per 8-hour workday and sit about 6 hours per workday.   (R. 28.)   Plaintiff has periodic problems with attention and concentration and occasional psychological problems affecting productivity, but retains an adequate mental ability to carry out instructions and to relate adequately to others in a routine work setting. (Id.)  The ALJ then concluded that Plaintiff is capable of performing her past relevant work as a secretary and, thus, she was not disabled.

## IV.  DISCUSSION

In her very long and disjointed memorandum, Plaintiff generally argues that the ALJ erred by finding that she was not disabled.  The medical evidence, however, does not support Plaintiff's assertion that she is unable to perform her past relevant work.

6

As the ALJ noted, the majority of Plaintiff's medical history involves at least fourteen emergency room visits for short-term conditions not related to her alleged impairments.  (R. 134-84.)  On November 16, 2001, Plaintiff presented with a left ankle strain. (R. 182-84.)  On July 14, 2002, Plaintiff presented with an upper respiratory infection.  (R. 180-81.) On July 24, 2002, Plaintiff presented with a fractured right foot after being pulled into a ditch by her dog. (R. 176-79.)  On July 26, 2002, Plaintiff presented with discomfort in her right ankle and foot from a cast that was placed that day. (R. 174-75.)  On January 19, 2003, Plaintiff complained of flu-like symptoms and the impression was cephalgia and acute sinusitis. (R. 170-72.)  On August 17, 2003, Plaintiff reported left ear pain after a loud noise in a movie. (R. 168-69.)

In October 2003, Plaintiff presented with chest pain, left arm numbness, tingling and pain, with a rapid heart rate. (R. 163-67.)   Plaintiff was not in acute physical distress; she was mildly tachycardic and had moderate chest wall tenderness. Plaintiff's extremities and neurological examinations were normal and an electrocardiogram was normal except for sinus tachycardia.  Plaintiff was diagnosed with acute chest wall pain and directed to apply moist heat or a heating pad.  On January 15, 2004, Plaintiff complained of a cough that had lasted for three weeks and she was diagnosed with resolving bronchitis. (R. 160-62.)   On July 1, 2004, Plaintiff presented with abdominal pain. (R. 156-58.)  Chest x-rays were normal; she was alert and oriented times three; not in acute distress; and her extremities and neurological exams were normal.

On February 10, 2005, reported cervical pain, lumbar pain, left wrist pain, left knee pain, left hip pain and right knee pain after falling at home. (R. 149-54.)  X-rays

were unremarkable and Plaintiff was diagnosed with multiple contusions.  On March 27, 2005, Plaintiff complained of sore throat, headache, nasal drainage, and body aches and was treated for upper respiratory infection with sinusitis. (R. 146-48.)  On June 4, 2005, she reported left upper chest wall pain and tenderness, mid-low back pain and a sensation of constipation with right groin pain or strain.  (R. 142-44.)  Plaintiff stated that she had been "doing a lot of heavy lifting and pushing and pulling" the day before. Plaintiff's physical exam revealed that she was extremely anxious and nervous but alert and oriented times three. She refused to urinate in a cup for urinalysis for fear it would cause cancer and ended up urinating in a hat in the toilet. The exam further revealed that her back and extremities were normal; and her neurologic, skin and urinalysis were normal.

On June 13, 2005, Plaintiff returned with complaints of hypoglycemia and was advised to follow an insulin-controlled diet. (R. 139-41.)  Two weeks later, on June 29, 2005, Plaintiff presented and complained of a constellation of symptoms including night sweats, palpitations, back pain and episodic chest pain; she was admitted for complaints of chest pain. (R. 134-38.)     Plaintiff was stable throughout her visit and her doctor thought her symptoms could suggest early menopause.

Plaintiff was also treated at Community Health Services and those records do not substantiate the disabling limitations alleged by Plaintiff either.  (R. 185-207.)  Notes from October 2003 state that Plaintiff had a right breast density (R. 189) but mammograms in May 2004 and February 2005 were benign. (R. 197-98.)   On June 14, 2005, Plaintiff stated that her blood sugar level had dropped very low for two weeks and she was unable to sleep due to hot flashes, sweating and shakes. (R. 192.)   On

8

examination, Plaintiff was alert and oriented times three; she had fast speech; normal lungs and heart; and normal extremities except for slight non-pitting edema. (R. 192.) On June 16, 2005, Plaintiff phoned Community Health Services complaining of severe night sweats and said she knew it was due to her blood sugar. (R. 191.)  Plaintiff was told that her blood sugar was normal; she should follow a healthy diet, have a high protein snack, and go to the emergency room if she worsened.  In August 2005, Plaintiff complained of dizzy spells when she got up, frequent urination, fatigue, depression, decreased sleep and anxiety. (R. 185.)

On February 26, 2006, Dantuluri P. Raju, M.D. performed a consultative evaluation. (R. 213-17.)   Dr. Raju noted that Plaintiff was healthy looking, well-oriented, very cooperative; presented well, with good personal hygiene and good communication; and did not look depressed. Plaintiff was able to get up and walk unassisted with a normal gait, and she had no difficulty getting on and off the exam table.  Plaintiff's HEENT, neck, chest, dorsal spine, lung and heart exams were all normal.  Her upper extremities were normal, except for tenderness over the joints and she had normal ranges of motion. Her grip was normal with good power at 4 out of 5 and normal dexterity.  Her lower extremities were normal with tenderness over the joints.  Plaintiff's cervical and lumbar spine had a full range of motion and no stiffness, although tenderness was noted.  No gross deficits were noted in the neurological exam; motor and sensory functions were intact, power was good and equal on both sides, and Plaintiff's deep tendon reflexes were normal and symmetrical. Dr. Raju diagnosed fatigue, fibromyalgia, arthralgias, insomnia, carpal tunnel syndrome, depression and

mononucleosis infection. He did not state that Plaintiff had any limitations resulting from her impairments.

In addition, non-examining physician, Eric Puestow, M.D. completed a physical RFC assessment in February 2006 and did not find limitations that would prevent Plaintiff from performing her past relevant work. (R. 236-43.) Dr. Puestow found that Plaintiff could occasionally lift 50 pounds and frequently lift 25 pounds; stand and/or walk about 6 hours in an 8-hour workday; sit about 6 hours in an 8-hour workday; and push and/or pull without limitation. Dr. Puestow noted that his conclusions were supported by the lack of objective findings of limitations in the consultative examination. He further noted that Plaintiff's allegations of pain and dysfunction greatly exceeded the objective findings.

Likewise, Plaintiff's psychological treatment records do not support the conclusion that she cannot perform any work. In September 2005, Plaintiff sought treatment from L. Murphy, RNS, MS. (R. 208-10.)   As an initial matter, a registered nurse is not an acceptable medical source, but rather is considered an "other source," and, thus, evidence from a registered nurse cannot establish the existence of an impairment and the opinion of a registered nurse is not entitled to any special consideration.[22]  While the Social Security Administration has acknowledged that opinions from other medical sources are "important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant

---

[22] 20 C.F.R. §404.1513(a), (d)(1), 404.1527(a)(2), 416.913(a),(d)(1), 416.927(a)(2).

evidence in the file," an ALJ is not required to accept the opinion of an individual who is not listed as an acceptable source of medical evidence.[23]

Moreover, the limited counseling records belie Plaintiff's claims that her mental condition is long-term and debilitating.  Plaintiff requested help dealing with mental health and medical conditions causing anxiety and depression.  (R. 210.) Plaintiff reported that her anxiety and depression exacerbated with the worsening of her fibromyalgia and chronic pain and having to live with an ill, angry, abusive mother. (R. 210.)  Notes from October 13, 2005 state that Plaintiff and Ms. Murphy discussed Plaintiff's need for antidepressants and encouraged Plaintiff to pursue a disability claim. (R. 209.)  On November 3, 2005, they discussed Plaintiff's problems with her mother, including coping mechanisms.  (R. 209.)  On November 22, 2005, they discussed domestic violence paperwork and co-dependency issues. (R. 208.)  Plaintiff was still unable to set limits with her mother and it was noted that getting disability benefits would give Plaintiff freedom to live alone, which would decrease her stress.  (R. 208.) Plaintiff was alert, oriented and appropriate and it was noted that she was "capable of living alone and caring for any financial matters."  (R. 208.)  In December 2005, Plaintiff seemed less stressed and was more optimistic about the future.   These limited records do not support Plaintiff's allegations of a debilitating mental impairment.

In addition, the consultative evaluation performed by Gary Honickman, Ph.D., in January 2006 does not identify any functional limitations.  (R. 211-12.)  On examination, Plaintiff was oriented in all spheres and her mood and affect were moderately anxious

---

[23] SSR 06-03p; <u>Frantz v. Astrue</u>, 509 F.3d 1299 (10th Cir. 2007); 20 C.F.R. §§404.1513(d), 416.913(d).

and depressed. She was able to say the alphabet in seven seconds; counted backwards from 20 in eight seconds; performed serial threes from 1-50 in twenty-five seconds; and could recall seven digits forward, five digits backward, all without error. Plaintiff reported that her daily schedule was to wake around 8:00-9:00 in the morning and have breakfast; do housework and watch television; eat dinner between 5:00 and 6:00 p.m. and go to bed around 12:30 and 1:00 a.m.  Dr. Honickman diagnosed Plaintiff with Adjustment Disorder with Depressed Mood, DSM IV 309.0 and Obsessive Compulsive Disorder, DSM IV 300.3,  but did not identify any functional limitations.

After the hearing, Plaintiff was referred to Linda S. Bojarski, Psy.D. for a second consultative psychological examination on May 4, 2007 but Plaintiff refused to cooperate and left after only 10 minutes.  (R. 270.)  Dr. Bojarski noted that when she attempted to administer a clinical interview and mental status examination, Plaintiff became contemptuous, attempted to control the interview, and refused to answer almost all questions presented.   Plaintiff asked that only the personality test be administered and Dr. Bojarski explained that it was important to obtain additional information before the test was given.  Dr. Bojarski stated that Plaintiff was inflexible and argumentative.  Plaintiff's refusal to participate in a consultative examination was an evasion of her duties under the regulations and undermined her disability claim.[24]

In addition, non-examining psychologist Steven Wise, Psy.D. found mild difficulties on activities of daily living and maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and no episodes of

---

[24] 20 C.F.R. §§404.1516, 404.1518(a), 416.916, 416.918(a).

decompensation.  Dr. Wise found that Plaintiff was not significantly limited in most areas but she was moderately limited in her ability to complete a normal workday and workweek and in her ability to get along with co-workers or peers without distracting them or exhibiting behavior extremes. Dr. Wise noted that Plaintiff could understand, remember and carry out simple tasks; maintain concentration and attention for routine uncomplicated tasks for two-hour periods during an eight-hour workday; complete a normal workweek without excessive interruptions from psychologically based symptoms; relate to supervisors and coworkers; and adapt to simple changes and avoid work hazards.   This medical evidence, all of which was considered by the ALJ, supports the conclusion that Plaintiff could perform her past relevant work as a secretary.

Plaintiff also makes numerous allegations of evidence tampering, incomplete records and prejudice on the part of the ALJ.  Specifically, Plaintiff alleged that the ALJ was prejudiced against chronic fatigue syndrome and the Centers for Disease Control and that he was attempting to offer his own diagnosis for Plaintiff. (Doc. 16 at 51-52.)  A presumption of honesty and integrity exists in those who serve as adjudicators for administrative agencies.[25]  The presumption can be rebutted by a showing of conflict of interest or some other specific reason for disqualification; but the burden of establishing a disqualifying interest rests on the party making the assertion.[26]

---

[25] Schweiker v. McClure, 456 U.S. 188, 195-96 (1982); Withrow v. Larkin, 421 U.S. 35, 47 (1975).

[26] Schweiker, 456 U.S. at 195-96.

Plaintiff has failed to cite anything in the ALJ's decision that suggests bias or prejudice. Plaintiff's position appears to be based on alleged statements made by the ALJ that he did not believe in chronic fatigue syndrome. (Doc. 16 at 51.) However, the hearing transcript does not support Plaintiff's allegation. The ALJ merely stated that some people have a tendency to become psychosomatic when reading about medical conditions. (R. 376-77.) As discussed above, the ALJ's conclusion that Plaintiff's severe impairments – including chronic fatigue syndrome – did not prevent her from performing her past relevant work is supported by substantial record evidence.

Finally, the ALJ met his basic obligation to develop a full and fair record. It is well-settled that an ALJ has a basic obligation to fully and fairly develop the record.[27] This obligation exists whether or not a claimant is represented by counsel.[28] As a hearing is non-adversarial in nature,[29] the duty to develop the record is triggered when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.[30] The Commissioner's duty to develop the record includes ordering a consultative examination if one is needed to make an informed decision.[31]

Here, Plaintiff stated that she understood her statutory right to be represented by counsel and waived that right at the hearing . (R. 361-62.) There is no showing of prejudice in this case and, therefore, remand is not required. The ALJ thoroughly

---

[27] See Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981); see also Zaldivar v. Apfel, 81 F. Supp. 2d 1353, 1359 (N.D. Ga. 2000).

[28] Zaldivar, 81 F. Supp 2d at 1359.

[29] Id.

[30] See Mason v. Barnhart, 63 Fed. Appx. 284, 2003 WL 1793283, *2 (9th Cir. 2003).

[31] See Reeves v. Heckler, 734 F.2d 519, 522 n.1 (11th Cir. 1984.)

questioned Plaintiff and gave her mother an opportunity to testify. Moreover, there are no apparent gaps in the hearing transcript as the ALJ asked Plaintiff her reasons for stopping work; her work history; her living arrangements and means of support; her education; her medical history and symptoms; her current treatment, medications and sleep patterns; and her psychological treatment. In addition, the ALJ referred Plaintiff for an additional psychological consultative evaluation but Plaintiff failed to cooperate. (R. 270, 380-81.) There was sufficient evidence in the record for the ALJ to decide Plaintiff's claim and Plaintiff has not provided any evidence from a medical source that is contrary to the ALJ's findings.

Accordingly, the Court concludes that the ALJ properly performed his duty to develop a full and fair record and, as discussed above, substantial evidence supports his findings and conclusion that Plaintiff was not disabled.

## V. CONCLUSION

In view of the foregoing, the decision of the Commissioner is **AFFIRMED** under sentence four of 42 U.S.C. § 405(g). The Clerk is directed to enter final judgment consistent with this Order and to close the file.

**IT IS SO ORDERED.**

**DONE AND ORDERED** in Ocala, Florida, on September 16, 2010.

GARY R. JONES
United States Magistrate Judge

Copies to:
    All Counsel
    *Pro Se* Plaintiff